IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JIMMIE E. PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-624-WKW |
| | ) | (WO) |
| TROY KING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On December 26, 2007, the Magistrate Judge entered a Recommendation (Doc. # 35) that the Motion for Preliminary Injunction (Doc. # 4) filed by Plaintiff Jimmie E. Parker ("Parker") be denied. In the Motion for Preliminary Injunction, Parker asks the court to enjoin defendants Troy King, W.M. Coppage, and Richard Allen (collectively, "the defendants") "from applying and/or enforcing, in whole or in part, any provision of [the Alabama Community Notification Act], . . . and to order [the removal of] Petitioner's name and information from all publicly disseminated registries to include, but not limited to, the internet and the Community Notification Flyer." (Mot. Prelim. Inj. 1.)

On January 11, 2008, Parker filed a twenty-eight page objection (Doc. # 40) to the Recommendation. Buried in the objection is the claim that the defendants should be enjoined from enforcing the residency and employment restrictions contained within the Alabama Community Notification Act ("ACNA"), Ala. Code § 15-20-20 *et seq.*, because they violate the *ex post facto* clause. In the Recommendation, the Magistrate Judge rejected Parker's *ex*

*post facto* challenge concluding that the Supreme Court had addressed the issue in *Smith v. Doe*, 538 U.S. 84 (2003).[1] While the Supreme Court in *Smith* did examine whether registration and community notification violate the *ex post facto* clause, the statute at issue there did not include residency or employment restrictions. Because the Recommendation does not specifically analyze this argument, the court analyzes the residency and employment restrictions in the context of Parker's Motion for a Preliminary Injunction. The court finds, after a *de novo* review, that the Recommendation is due to be adopted in part, and rejected in part, but that the Motion for Preliminary Injunction is due to be denied.

## I. FACTS AND PROCEDURAL HISTORY

ACNA imposes limits on adult criminal sex offenders[2] after their release from

---

[1] The statute in *Smith* required sex offenders to register with law enforcement and provided for community notification through a registry that made the sex offender's name, address, photograph, and place of employment public information. *Smith*, 538 U.S. at 90.

[2] An adult criminal sex offender is "[a] person convicted of a criminal sex offense . . . ." Ala. Code § 15-20-21(A). A criminal sex offense is:

Any of the following offenses:

a. Rape in the first or second degree, as proscribed by Section 13A-6-61 or 13A-6-62; provided that a sentencing court may exempt from this articule a juvenile or youthful offender criminal sex offender for a criminal sex offense as defined in Section 13A-6-62(a)(1).

b. Sodomy in the first or second degree, as proscribed by 13A-6-63 or 13A-6-64.

c. Sexual torture, as proscribed by Section 13A-6-65.1.

d. Sexual abuse in the first or second degree as proscribed by Section 13A-6-66 or 13A-6-67.

e. Enticing a child to enter a vehicle, room, house, office, or other place for immoral purposes, as proscribed by Section 13A-6-69.

incarceration. It includes provisions requiring registration, community notification, electronic monitoring, and residency and employment restrictions. An adult criminal sex offender cannot "establish a residence or any other living accommodation or accept employment within 2,000 feet of the property on which any school or child care facility is located." Ala. Code § 15-20-26(a). Additionally, adult criminal sex offers cannot "establish a residence or any other living accommodation within 1,000 feet of the property on which any of his or her former victims, or the victims' immediate family members reside." *Id.* § 15-

---

f. Promoting prostitution in the first or second degree, as proscribed by Section 13A-12-111 or 13A-12-112.

g. Violation of the Alabama Child Pornography Act, as proscribed by Section 13A-12-191, 13A-12-192, 13A-12-196, or 13A-12-197.

h. Kidnapping of a minor, except by a parent, in the first or second degree, as proscribed by Section 13A-6-43 or 13A-6-44.

i. Incest, as proscribed by Section 13A-13-3, when the offender is an adult and the victim is a minor.

j. Soliciting a child by computer for the purposes of committing a sexual act and transmitting obscene material to a child by computer, as proscribed by Sections 13A-6-110 and 13A-6-111.

k. Any solicitation, attempt, or conspiracy to commit any of the offenses listed in paragraphs a. to j., inclusive.

l. Any crime committed in any state or a federal, military, Indian, or a foreign country jurisdiction which, if it had been committed in this state under the current provisions of law, would constitute an offense listed in paragraphs a. to k., inclusive.

m. The foregoing notwithstanding, any crime committed in any jurisdiction which, irrespective of the specific description or statutory elements thereof, is in any way characterized or known as rape, sodomy, sexual assault, sexual battery, sexual abuse, sexual torture, solicitation of a child, enticing or luring a child, child pornography, lewd and lascivious conduct, taking indecent liberties with a child, or molestation of a child.

*Id.* § 15-20-21(4).

3

20-26(b). The statute also provides that "[n]o adult criminal sex offender, after having been convicted of a criminal sex offense involving a child, shall accept, maintain or carry on any employment or vocation at or within 500 feet a school, child care facility, playground, park, athletic field or facility, or any other business or facility having a principal purpose of caring for, educating, or entertaining minors."[3] *Id.* § 15-20-26(g). An individual who knowingly violates § 15-20-26 is guilty of a Class C felony.

Besides limiting where adult criminal sex offenders can live and work, ACNA requires sex offenders to provide notice before moving or changing employment locations. An adult criminal sex offender must

> submit a notice of intent to move to the sheriff of the county and the chief of police of the municipality in which he or she resides, and to the sheriff of the county and chief of police of the municipality to which he or she plans to move, if such are different, at least 30 days prior to moving to the new location.

*Id.* § 15-20-23. An adult criminal sex offender must submit a similar notice "at least seven days prior to beginning employment at a new location." *Id.* § 15-20-23.1.

Parker is classified as an adult criminal sex offender under ACNA based on a 1984 offense that occurred in Kansas. He contends that he was unable to change jobs in September 2007, because the location where he was going to work was too close to multiple daycare centers. (Pl.'s Objection 9-10.) Parker also claims that in both December 2007, and

---

[3] A criminal sex offense involving a child is defined as: "A conviction for any criminal sex offense in which the victim was a child under the age of 12 and any offense involving child pornography." Ala. Code § 15-20-21(5).

4

January 2008, his employer ordered him to report for work in Mississippi on twenty-four hours notice, but he was unable to go because under ACNA he is required to provide notice seven days before changing work locations. (*Id.* 10.)

## II. STANDARD OF REVIEW

"The grant or denial of a preliminary injunction is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). A plaintiff must establish four prerequisites to be entitled to a preliminary injunction:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the plaintiff outweighs the harm an injunction may cause the defendant, and (4) that granting the injunction would not disserve the public interest.

*Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (internal citation and quotation marks omitted). "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Ne. Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal citation and quotation marks omitted).

## III. ANALYSIS

With regard to substantial likelihood on the merits, the burden is on Parker to demonstrate that the residency and employment restrictions are indeed *ex post facto* laws.

The Constitution provides that "[n]o state shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. An *ex post facto* law punishes retroactively, meaning that "it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida*, 482 U.S. 423, 430 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 31 (1981)).

No Alabama court has reached the merits of the constitutionality of ACNA's employment and residency restrictions. While the Alabama Criminal Court of Appeals has found ACNA's employment and residency restrictions constitutional, in each decision the plaintiff had failed to present substantial evidence to support his claims. *See Salter v. State*, 971 So. 2d 31, 37 (Ala. Crim. App. 2007) ("Salter has failed to present substantial evidence that the residency requirements of [ACNA] have a punitive effect on him."); *Boyd v. State*, 960 So. 2d 717, 720 (Ala. Crim. App. 2006) ("Therefore, there is no factual basis for Boyd's claim that [ACNA] punitive in its effects.); *Lee v. State*, 895 So. 2d 1038, 1043 (Ala. Crim. App. 2004) ("[T]here were no factual bases for these claims presented to the trial court.").

Neither the Supreme Court nor the Eleventh Circuit has addressed the constitutionality of other states' statutes with residency or employment restrictions. Federal courts that have addressed this issue are divided. *Compare Doe v. Miller*, 405 F.3d 700, 704-05 (8th Cir. 2005) (finding statute imposing a 2,000 foot residency restriction constitutional); *Doe v. Baker*, No. 05-2265, 2006 WL 905368, at *6 (N.D. Ga. Apr. 5, 2006) (finding statute with 1,000 foot residency restriction constitutional) *with Mikaloff v. Walsh*, No. 06-96, 2007 WL 2572268, at *3 (N.D. Ohio Sept. 4, 2007) (finding unconstitutional statute with

1,000 foot residency restriction).

While the Supreme Court has not addressed the constitutionality of residency and employment restrictions, it has set forth the framework to be used when evaluating *ex post facto* challenges to statutes imposing restrictions on sex offenders. *See Smith*, 538 U.S. at 92. To determine whether a statute violates the *ex post facto* clause, the court "must ascertain whether the legislature meant the statute to establish civil proceedings." *Id.* (internal citation and quotation marks omitted). If the legislature intended punishment, then the statute is deemed criminal, and the inquiry ends. *Id.* However, if the legislature intended the law to be civil and nonpunitive, the inquiry is whether the law is "so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (internal citation and quotation marks omitted). "[O]nly the clearest proof will suffice" to transform a civil regulation into a criminal penalty. *Id.* (internal citation and quotation marks omitted).

*A. Legislative Intent*

"Whether a statutory scheme is civil or criminal is first of all a question of statutory construction." *Smith*, 538 U.S. at 92 (internal citation and quotation marks omitted). The court determines "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Hudson v. United States*, 522 U.S. 93, 100 (1997) (internal citation and quotation marks omitted). In this inquiry, courts have examined the text of the statute and the manner of codification. *See Smith*, 538 U.S. at 93-95.

When the legislature's stated intent in enacting a statute is to protect the public, courts have concluded that it is a civil scheme. *See id.* at 92. In *Smith*, the Alaska statute never "expressly designate[d] the requirements imposed as 'civil.'" *Id.* at 107 (Souter, J., concurring). However, the legislature found "'sex offenders pose a high risk of reoffending' and identified 'protecting the public from sex offenders' as the 'primary governmental interest' of the law." *Id.* at 93 (majority). The court concluded that the statute was civil because "nothing on the face of the statute suggests that the legislature sought to create anything other than a civil scheme designed to protect the public from harm." *Id.* (internal citation and quotation marks omitted).

Likewise, the Alabama legislature intended ACNA to be a civil statute. While ACNA's text does not state that it is civil, the legislature did find "that the protection of the public from [criminal sex] offenders is a paramount concern or interest to government." Ala. Code. § 15-20-20.1. Moreover, "residency and employment restrictions for criminal sex offenders provide additional protections to vulnerable segments of the public such as schools and child care facilities." *Id.* Because the legislature sought to protect the public, the court concludes that it intended ACNA to be civil.

The "manner of [the statute's] codification" is also "probative of the legislature's intent." *Smith*, 585 U.S. at 94. The plaintiff in *Smith* argued that the Alaska legislature intended the statute to be a criminal because the registration provisions were codified within the criminal procedure code. However, the codification of the statute was not dispositive

8

because the title of the code on criminal procedure contained civil procedures and provisions on criminal administration, which were not punitive. *Id.* at 95. The Court concluded that "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." *Id.* at 94.

Here, ACNA is codified in title 15, which contains criminal procedure law. As in *Smith*, this title contains provisions regarding criminal administration, which are not punitive. The codification of ACNA in the title on criminal procedure does not establish a punitive purpose. Because ACNA is a civil law, the court's analysis moves to whether ACNA is punitive in effect.

**B.  Practical Effect**

The issue now becomes whether the practical effect of ACNA transforms it into a criminal statute. "[O]nly the clearest proof" is sufficient to transform a civil regulation into a criminal penalty. *See Smith*, 538 U.S. at 92. To find a statute punitive in effect, the Supreme Court has directed courts to use the following factors taken from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963):

> [W]hether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with regard to this purpose.

*Smith*, 538 U.S. at 97.

9

In the Motion for Preliminary Injunction and in the Objection, Parker does not analyze – or mention – any of these factors. His argument consists of general statements that the legislature cannot enact *ex post facto* laws. While Parker is proceeding *pro se* and the court liberally construes his complaint, "this leniency does not give a court license to serve as *de facto* counsel for a party." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). Because Parker has presented no argument with regard to these factors, the court finds that Parker has not established by the "clearest proof" that the employment and residency restrictions violate the *ex post facto* clause. *See also Salter*, 917 So. 2d at 37 (finding ACNA was not punitive in effect when the plaintiff "failed to argue or present any evidence as to any *Mendoza-Martinez* factor other than alleging 'an affirmative disability or restraint.'"). Moreover, because the motion before the court seeks a preliminary injunction, Parker bears the burden of establishing that he has a likelihood of success on the merits. Given that Parker bears the burden of proof and has presented no argument here, the court finds that he has not established a likelihood of success on the merits that the statute is punitive in effect and violates the *ex post facto* clause. The court expresses no opinion today on whether Parker could present evidence and arguments to establish by the clearest proof that the residency and employment restrictions violate the *ex post facto* clause and leaves that question for another day; instead, the court's holding is that Parker's bare contention that the residency and employment restrictions violate the *ex post facto* clause does not establish that he is entitled to a preliminary injunction.

Because Parker has not shown a substantial likelihood of success on the merits, his motion for a preliminary injunction is due to be denied. *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (concluding that because plaintiffs had not established a substantial likelihood of success on the merits the court need not address the remaining factors in the preliminary injunction analysis).

### IV.  CONCLUSION

For the reasons set forth above, it is ORDERED that:

1. Plaintiff's Objection (Doc. # 40) is OVERRULED.

2. The Recommendation (Doc. # 35) is ADOPTED in part and REJECTED in part. The analysis regarding whether the residency and employment restrictions are constitutional under the *ex post facto* clause is rejected, and the balance of the Recommendation is ADOPTED.

3. Plaintiff's Motion for Preliminary Injunction (Doc. # 4) is DENIED.

4. This case is REFERRED back to the Magistrate Judge for further proceedings.

DONE this 31st day of March, 2008.

                                     /s/  W.  Keith Watkins
                                     UNITED STATES DISTRICT JUDGE